# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA SCHWEINSBURG, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>GENERAL MILLS, INC.; GENERAL MILLS SALES, INC.,<br><br>  Defendants. | Case No.: 3:22-cv-00403-RBM-DDL<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION TO REMAND; and**<br><br>**(2) GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE**<br><br>[Docs. 6, 15] |

Currently pending before the Court are: (1) Plaintiff Loretta Schweinsburg's ("Plaintiff") motion to remand filed on March 29, 2022 (Doc. 6); and (2) Defendants' General Mills, Inc. and General Mills Sales, Inc. ("Defendants") motion to dismiss filed on April 11, 2022 (Doc. 15). The parties have fully briefed both motions. (*See* Docs. 18, 19, 20, 23.) The Court took both matters under submission pursuant to Civil Local Rule 7.1(d)(1). (Doc. 17.)

For the reasons discussed below, Defendants' motion to dismiss is **GRANTED**, Plaintiff's claims are **DISMISSED WITH PREJUDICE**, and Plaintiff's motion to remand is **DENIED**.

I.    BACKGROUND

Plaintiff filed this putative class action in the Superior Court of California for the County of San Diego on February 23, 2022, challenging Defendants' use of partially hydrogenated oils ("PHO" or "PHOs") in its Hamburger Helper products[1] and alleging: (i) violations of the unfair and unlawful prongs of California's Unfair Competition Law ("UCL"); and (ii) breach of the implied warranty of merchantability.  (*See* Compl., Doc. 1-2 ¶¶ 134–52.)  Plaintiff seeks to represent a class of "[a]ll citizens of California who purchased Hamburger Helper, Tuna Helper, and/or Chicken Helper containing partially hydrogenated oil in California between January 1, 2000 and December 31, 2016."  (*Id*. ¶ 126.)  Plaintiff requests various forms of relief, including: "[d]eclaratory relief that the conduct alleged [in the Complaint] is unlawful; (2) an award of actual damages, (3) punitive damages, (4) "restitution of $60 million," and (5) "[a]n award of attorney fees and costs."  (*Id*. at 25, Section XII.)

Defendants removed Plaintiff's action to this Court on March 28, 2022.  (*See* Doc. 1.)  In their notice of removal, Defendants allege the Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA").  (*Id*. at 3) (citing 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453(b)).

On March 29, 2022, Plaintiff filed a motion to remand, alleging she lacks Article III standing to proceed in federal court.  (*See* Doc. 6 at 6 ("Schweinsburg's allegations that she purchased products which were detrimental to her health and were unfairly offered for sale in violation of federal and California law are insufficient to confer Article III standing.").)  Defendants filed a brief in opposition to Plaintiff's motion to remand, arguing that while Plaintiff "has admitted she has suffered no economic injury and thus fails to state a claim on the merits under either the [UCL], or for breach of the implied warranty of

---

[1] In her Complaint, Plaintiff refers to Defendants' Hamburger Helper, Tuna Helper, and Chicken Helper products collectively as the "Hamburger Helper" products.  (*See* Compl., Doc. 1-2 ¶ 3.)

merchantability," "Schweinsburg has alleged consumption levels of PHOs, and resulting physical harm, sufficient to give rise to Article III standing on an immediate physical injury theory." (Doc. 18 at 8, 10.)

Defendants subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 11, 2022. (Doc. 15-1.) In their motion to dismiss, Defendants argue Plaintiff's claims are preempted by federal law, noting "no fewer than *nine federal courts* have dismissed similar complaints on these grounds, all of which were filed by Plaintiff's counsel Mr. Greg Weston." (*Id*. at 7 (emphasis in original).) Defendants further argue Plaintiff's claims should be dismissed because: (1) they are barred by the four-year statute of limitations; and (2) her claims are barred for lack of economic injury. (*Id*.) Plaintiff argues in opposition that her claims are not preempted by federal law, she has adequately alleged breach of the implied warranty of merchantability, and the statute of limitations does not bar her claims. (*See* Doc. 20.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). At the motion to dismiss stage, all material factual allegations in the complaint are accepted as true and are construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. (citation omitted).

To avoid dismissal under Rule 12(b)(6), a complaint need not contain detailed factual allegations; rather, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In other words, "the non-conclusory 'factual content,' and reasonable inferences from that

content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### III.   DISCUSSION

In this lawsuit, Plaintiff challenges Defendants' use of PHOs in its Hamburger Helper products. (*See, e.g.*, Compl. at 14 ("The Use of PHO in Hamburger Helper Was Unfair").) The Court finds that Plaintiff's claims, however, are preempted by federal law, and joins numerous other courts across the Ninth Circuit which have dismissed nearly identical claims on conflict preemption grounds. *See, e.g., Hawkins v. Advancepierre Foods, Inc.*, No. 15-CV-2309-JAH (BLM), 2016 WL 6611099, at *7 (S.D. Cal. Nov. 8, 2016), *aff'd*, 733 F. App'x 906 (9th Cir. 2018) (granting defendant's motion to dismiss with prejudice, finding federal law preempted plaintiff's claim that defendant's use of PHO in its food products violated the unfair and unlawful prongs of the UCL and breached the implied warranty of merchantability); *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 954 (N.D. Cal. 2019); *Beasley v. Conagra Brands, Inc.*, 374 F. Supp. 3d 869, 874–78 (N.D. Cal. 2019); *Backus v. Biscomerica Corp.*, 378 F. Supp. 3d 849, 856 (N.D. Cal. 2019); *Backus v. General Mills, Inc.*, No. 15-cv-01964-WHO, 2018 WL 6460441, at *3–6 (N.D. Cal. Dec. 10 2018); *Walker v. ConAgra Foods, Inc.*, No. 15-CV-02424-JSW, 2017 WL 11674907, at *3 (N.D. Cal. Mar. 31, 2017); *Backus v. Nestle USA, Inc.*, 167 F. Supp. 3d 1068, 1071–74, 1077 (N.D. Cal. 2016); *Backus v. ConAgra Foods, Inc.*, No. C 16–0454 WHA, 2016 WL 3844331, at *3–4 (N.D. Cal. July 15, 2016).[2]

**A. Conflict Preemption Bars Plaintiff's Claims**

"Pursuant to the Supremacy Clause, U.S. CONST., ART. VI, cl. 2, federal law can

---

[2] The Court notes each of these lawsuits were filed by Plaintiff's counsel, Gregory S. Weston of The Weston Firm.

4

preempt and displace state law through: (1) express preemption; (2) field preemption (sometimes referred to as complete preemption); and (3) conflict preemption." *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003) (citations omitted). "Conflict preemption is found where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. (citations and internal quotation marks omitted). When considering whether a claim is barred by conflict preemption, "the Court focuses on Congress's purpose and the goals and policies of the federal law." *Hawkins*, 2016 WL 6611099, at *6 (citing *Ting*, 319 F.3d at 1136). Although there is "a presumption against federal preemption of state laws that operate in traditional state domains," *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (quotation omitted), this Court, like others to have considered this issue, finds Defendants have met their burden to rebut that presumption. *See Hawkins*, 2016 WL 6611099, at *6; *Walker*, 2017 WL 11674907, at *2; *Backus v. General Mills*, 2018 WL 6460441, at *4.

The relevant federal law is the Food, Drug, and Cosmetic Act ("FDCA"), which prohibits, *inter alia*, "[t]he introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated," *see* 21 U.S.C. § 331(a), and "[t]he receipt in interstate commerce of any food . . . that is adulterated . . . , and the delivery or proffered delivery thereof," *see id*. § 331(c). A food is adulterated if it "contains . . . any food additive that is unsafe within the meaning of" 21 U.S.C. § 348. *Id*. § 342(a)(2)(C)(i). A food additive is deemed unsafe unless there is "a regulation issued . . . prescribing the conditions under which such additive may be safely used," and the additive is used in conformity with such regulation. *Id*. § 348(a)(2).

On June 17, 2015, the Food and Drug Administration ("FDA") issued a final determination regarding the use of PHOs in food. *See* Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650 (June 17, 2015) ("Final Determination"). The FDA determined "there is no longer a consensus among qualified experts that [PHOs], which are the primary dietary source of industrially-produced trans fatty acids (IP-TFA)

are generally recognized as safe (GRAS) for any use in human food." *Id*. Pursuant to the Final Determination, the FDA "require[d] discontinuation of the use of" PHOs, *see id*. at 34656, and set a "compliance date" of June 18, 2018, *see id*. at 35653, 34668–69 (explaining three-year compliance deadline would provide time for "submission and review of food additive petitions" for PHOs and time to address challenges in "reformulat[ing] products to remove PHOs"). The FDA explained that setting a compliance date three years in the future "will have the additional benefit of minimizing market disruptions by providing industry sufficient time to identify suitable replacement ingredients for PHOs, to exhaust existing product inventories, and to reformulate and modify labeling of affected products." *Id*. at 34669.

Later that year, on December 18, 2015, Congress passed the Consolidated Appropriations Act, 2016. Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, § 754, 129 Stat. 2242, 2284 (2015) ("Section 754"). Section 754 made clear that "[n]o [PHOs] as defined in the [Final Determination] shall be deemed unsafe within the meaning of section 409(a) and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under sections 402(a)(1) or 402(a)(2)(C)(i) by virtue of bearing or containing a [PHO] until the compliance date as specified in such order (June 18, 2018)." *Id*.

In support of her PHO use claims, Plaintiff advances the same theories on which use claims have been brought—and rejected as preempted under federal law—in numerous other courts throughout this Circuit. *See*, *e.g.*, *Lucky Stores*, 400 F. Supp. 3d. at 951; *Nestle*, 167 F. Supp. 3d at 1074. Plaintiff's claims in this lawsuit are premised entirely on Defendants' use of PHOs in their Hamburger Helper products during the January 1, 2000 through December 31, 2016 class period, well before the June 18, 2018 compliance date. (*See* Compl. ¶ 126.) But, as in *Lucky Stores* and *Nestle*, challenging Defendants' use of PHOs in its Hamburger Helper products between 2000 and 2016, prior to the June 18, 2018 compliance date, "would effectively negate the FDA's order setting a compliance date in 2018 and 'stand[ ] as an obstacle to the accomplishment and execution of the full purposes

and objectives' of the FDA in adopting that order." *Nestle*, 167 F. Supp. 3d. at 1072 (quoting *Ting*, 319 F.3d at 1136).

Indeed, "allowing Plaintiff to proceed on her state claims would contravene Congress's purpose in passing section 754 of the 2016 CAA, which was to prevent economic disruption and preclude lawsuits against food producers based on PHO content until the compliance date set forth in the Final Determination." *Hawkins*, 2016 WL 6611099, at 7. As other courts to consider this issue have noted, *see id*., the legislative history of Section 754 states it was passed in part to prevent market interference and frivolous lawsuits. *See* H.R. REP. NO. 114–205, at 71 (2015) ("The Committee is concerned that the FDA's recent final determination that [PHOs] are no longer [GRAS] could cause economic disruption in the marketplace and lead to unnecessary litigation."); FY 2016 Omnibus Summary – Agriculture Appropriations, HOUSE APPROPRIATIONS COMMITTEE[3] (stating that "[t]he legislation includes several policy provisions, including . . . [a] provision to amend FDA policy relating to the regulatory treatment of partially hydrogenated oils so that the baking industries and small businesses are not subject to frivolous lawsuits"); *see also* Legislative Digest, Dec. 18, 2015, REPUBLICAN POLICY COMMITTEE[4] (stating that "the omnibus . . . amends an FDA policy relating to the regulatory treatment of partially hydrogenated oils to prevent frivolous lawsuits").

Plaintiff relies here on arguments that have been rejected and case law that has been distinguished by other courts. For example, Plaintiff cites *Reid v. Johnson & Johnson*, 780 F.3d 952, 959–60 (9th Cir. 2015) and *Hawkins v. Kroger Co.*, 906 F.3d 763, 772 (9th Cir. 2018), arguing "[t]wice has the Ninth Circuit found that UCL challenges to the labeling of food containing PHO were not preempted by the extensive federal law dealing with food

---

[3] *See* https://web.archive.org/web/20170513231947/http://appropriations.house.gov/uploadedfiles/12.15.15_fy_2016_omnibus_-_agriculture_-_summary.pdf (last visited Nov. 4, 2022).
[4] *See* https://www.gop.gov/bill/house-amendment-1-to-the-senate-amendment-to- h-r-2029-consolidated-appropriations-act-2016/ (last visited Nov. 4, 2022).

labeling." (Doc. 20 at 10.)  But here, unlike in *Reid* and *Kroger*, Plaintiff challenges only the *use* of PHOs in Defendants' Hamburger Helper products; Plaintiff has not brought any labeling claims challenging statements made on Defendants' product packaging.[5]

Additionally, like the plaintiffs in *Lucky Stores* and *Nestle*, Plaintiff relies on the "presumption against preemption," arguing "the text of § 754 says nothing about the states or state law." (Doc. 20 at 9–10.)  But numerous district courts have rejected this same argument, having considered—and found defendants had properly rebutted—the presumption against preemption.  *See*, *e.g.*, *Lucky Stores*, 400 F. Supp. 3d at 952 ("In [*Nestle*], the Court, while acknowledging the presumption against preemption, nonetheless found the use claims preempted.").  Additionally, Plaintiff bases her "presumption against preemption" argument on distinguishable case law that has been rejected as inapposite by other courts.  *See id*. at 953 (distinguishing *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1153 (9th Cir. 2017) and *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1139–43 (9th Cir. 2015) because "each said case considered whether a broadly applicable federal law governing an industry preempted a narrower state law prohibiting specific conduct not encompassed by the broader statute").

Plaintiff also argues Section 754 does not apply retroactively, an argument that has been rejected, again, by numerous courts to consider the issue. *See Biscomerica*, 378 F. Supp. 3d at 855 ("The Court finds that Section 754 is retroactive, meaning that Biscomerica

---

[5] As discussed in *Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 953 (N.D. Cal. 2019), the Ninth Circuit in *Hawkins v. Kroger Co.*, 906 F.3d 763, 773 (9th Cir. 2018) declined to exercise its discretion to analyze whether the plaintiff's use claims were preempted by the FDA's 2015 Final Determination, because "[t]he preemption issue was not fully briefed on appeal by either party."  And while the Ninth Circuit directed the district court on remand "to decide in the first instance to what extent, if at all, the state law use claims are federally preempted," *id*., the district court's decision on remand appears to address the preemption issue only with respect to the plaintiff's labeling claims.  *See Hawkins v. Kroger Co.*, NO. 15cv2320 JM (BLM), 2019 WL 1506845, at *4 (S.D. Cal. 2019) (holding labeling claim was not preempted and distinguishing, as a "line of authority address[ing] a different issue than that before the court," cases holding use claims preempted by federal law).

8

did not violate federal law by selling cookies containing PHO during the class period."); *Lucky Stores*, 400 F. Supp. 3d at 952 (relying on *Nestle* and rejecting plaintiff's argument that Section 754 did not apply retroactively); *Conagra Brands*, 374 F. Supp. 3d at 878 ("The Court likewise rejects plaintiff's argument that § 754 was not intended to be given 'retroactive' effect."); *General Mills*, 2018 WL 6460441, at *6 (same). The Court similarly rejects Plaintiff's arguments that: (1) when Congress intends to preempt state law, it does so in an express manner (Doc. 20 at 15); and (2) Section 754 regulates only the FDA, not the states (*id*. at 11). As explained by the Court in *General Mills*, Plaintiff's argument about express preemption "ignores conflict preemption." 2018 WL 6460441, at *6 (citing *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) ("Even without an express provision for preemption, we have found that state law must yield to a Congressional Act . . . [where] the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.")). And Plaintiff's argument that Section 754 does not regulate the states "is illogical, inconsistent with how he has brought his claims, and has been rejected by a number of courts." *Id*. at 5 (rejecting similar arguments and noting "[t]his argument has been previously rejected by several courts in this district").

The Court finds Plaintiff "has not provided the Court with any authority or other reason to suggest its conclusion in [*Nestle*] was incorrect or that it should reach a different conclusion in the instant case." *Lucky Stores*, 400 F. Supp. 3d at 953. Accordingly, "faced with the same type of use claims, the same regulatory and statutory framework, and, by and large, the same arguments, the Court concludes [plaintiff's] use claims, like those in [*Nestle*], are preempted." *Id*.[6]

**B. Remand Would Be Futile**

Plaintiff, relying on *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 710 (9th Cir. 2020),

---

[6] Because the Court finds Plaintiff's state law claims preempted by federal law, the Court does not address Defendants' additional arguments in support of their motion to dismiss.

argues the Court should remand this action to state court because Plaintiff lacks Article III standing. (Doc. 6 at 3–6.) The plaintiff in *McGee*—who was also represented by Plaintiff's counsel Mr. Weston—argued defendant "engaged in unfair practices, created a nuisance, and breached the warranty of merchantability by including [PHOs]" in its popcorn product. *Id*. at 702. The Ninth Circuit affirmed the district court's finding that McGee failed to sufficiently allege an injury in fact, and therefore lacked standing to proceed in federal court. *Id*. at 710.

As Defendants note in their opposition to Plaintiff's motion to remand, there are at least a few differences between the allegations of injury made by Plaintiff in this case and the plaintiff in *McGee*. (*See* Doc. 18 at 12–13.) While the plaintiff in *McGee* alleged she consumed "nearly half [a] pound" of trans fat from the defendant's product, *McGee*, 982 F.3d at 704, in this action Plaintiff alleges she consumed up to nine times the level of PHOs as the plaintiff in *McGee*, for a total of about 4.4 pounds. (*See* Compl. ¶ 71 (alleging Plaintiff "personally consumed approximately two kilograms of PHO during the Class Period").) Plaintiff's allegations regarding what level of PHOs cause physical injuries also differ from those allegations in *McGee*. The *McGee* court rejected Plaintiff's allegation that consumption of PHOs "in any quantity" caused physical injury, finding no support for that assertion in the studies cited in the complaint. 982 F.3d at 708–709. Here, however, Plaintiff alleges her consumption of 4.4 pounds of PHOs was "a dangerous amount of an illegal and dangerous food additive," relying in part on an April 13, 2006 issue of the New England Journal of Medicine which Plaintiff alleges supports her allegation of present physical injury. (*See* Compl. ¶¶ 71–72, 104.)

In any event, the Court need not resolve the Article III standing issue at this time, because remand to state court would be futile. *See Global Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920, n.6 (9th Cir. 2022); *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1198 (9th Cir. 2016). In general, where a district court lacks subject matter jurisdiction over a case removed to federal court, the appropriate action is to remand to state court. *See* 28 U.S.C. § 1447(c). However, where there is "absolute certainty" that

the state court would "simply dismiss[ ] the action on remand," remand would be futile and dismissal is appropriate. *Global Rescue*, 30 F.4th at 920, n.6 (citing *Polo*, 833 F.3d at 1197–98). Here, as in *Global Rescue*, the futility exception applies because "the federal law that deprives the federal court of jurisdiction also deprives the state court of jurisdiction." *Id*. (citation omitted).

## IV.   CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss (Doc. 15) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Because remand to state court would be futile due to federal preemption of Plaintiff's claims, Plaintiff's motion to remand (Doc. 6) is **DENIED**. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

DATE:  November 7, 2022

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE